

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-07-207-CV

LASHUN RICHARDSON                                                  APPELLANT

V.

FOSTER & SEAR, L.L.P., ATTORNEYS AT LAW                           APPELLEES
AND SCOTT W. WERT

------------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

Appellant LaShun Richardson, a pro se inmate, appeals from the trial court's order dismissing his claims against Appellees Foster & Sear, L.L.P. and Scott W. Wert (collectively, "Foster & Sear") for failing to serve them with notice of suit under the Texas Deceptive Trade Practices Act ("DTPA"). We reverse and remand.

## Background

Richardson's father, Willie Richardson, hired Foster & Sear to represent him for a personal injury claim resulting from asbestos exposure. Willie died before resolution of the claim. Richardson and his sister—Willie's only heirs—agreed to allow Foster & Sear to represent their interests as Willie's heirs in the asbestos litigation.

Richardson sued Foster & Sear on May 22, 2006, for "negligence, professional negligence, breach of warranty, breach of contract and gross negligence" and DTPA violations. He alleged that Foster & Sear settled the asbestos claim without his approval and withheld settlement proceeds from him.

Foster & Sear filed an original answer and verified plea in abatement, asserting that Richardson had failed to serve presuit notice of his claim under the DTPA. Foster & Sear later filed a motion to abate, and the trial court abated the suit on August 22, 2006, "until written notice is tendered to Defendants in accordance with the Texas Business and Commerce Code."

On August 30, 2006, Richardson served a one-page letter on Foster & Sear, stating that he would "submit a claim of professional liability against you in reference to the underlying asbestos litigation" for "misrepresentation . . .

2

and fraudulent misrepresentation . . . that has formed the basis of my claim in connection with negligence . . . and professional negligence." Richardson did not state an amount of actual damages, but he stated that he sought exemplary damages of $1.5 million.

Richardson filed a motion to lift the abatement on November 15, 2006. The trial court denied his motion on February 20, 2007.

On March 5, 2007, Richardson served a second DTPA notice letter on Foster & Sear through their attorney. This second letter is six pages long and alleges that Foster & Sear settled the underlying asbestos claim with various defendants but failed to forward Richardson's share of the settlement proceeds to him. Richardson demanded a total of $500,000 to settle the various claims asserted in the letter.

On April 17, 2007, Foster & Sear filed a motion to dismiss Richardson's suit, arguing in a single sentence that Richardson's March 5, 2007 letter did not meet the requirements of the DTPA. The motion did not explain in what way the letter was deficient or cite any authority other than the DTPA. Richardson filed an "objection" to the motion to dismiss, asserting that his March 5 letter fulfilled the DTPA's notice requirements.

On May 22, 2007, the trial court signed an order dismissing Richardson's entire suit against Foster & Sear, including his non-DTPA causes of action. This

appeal followed.  In a single issue, Richardson argues that the trial court abused its discretion by dismissing his claims.

## Standard of Review

To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  *Id*.

## The DTPA's Notice Requirement

Under DTPA section 17.505, a plaintiff must give notice of a DTPA claim to a defendant sixty days before filing suit:

> As a prerequisite to filing a suit seeking damages under Subdivision (1) of Subsection (b) of Section 17.50 of this subchapter against any person, a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in reasonable detail of the consumer's specific complaint and the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant. During the 60-day period a written request to inspect, in a reasonable manner and at a reasonable time and place, the goods that are the

4

subject of the consumer's action or claim may be presented to the consumer.

TEX. BUS. & COM. CODE ANN. § 17.505(a) (Vernon 2002). The purpose of the notice provision is to discourage litigation and encourage settlement of consumer complaints. *Hines v.Hash*, 843 S.W.2d 464, 468 (Tex. 1992).

When the supreme court decided *Hines* in 1992, the Legislature had not specified a consequence for noncompliance with the DTPA's notice requirement. *Id*. After analyzing the purpose of the requirement and the consequences for noncompliance imposed by the lower courts, the supreme court held that "[w]hen a plaintiff fails to comply with the requirement, abatement of the action for the statutory notice period is more consistent with the purpose of notice than dismissal." *Id.* at 468–69.

Three years later, the Legislature amended the DTPA to conform the notice provision to the *Hines* opinion and provide for abatement when a DTPA plaintiff fails to give presuit notice. *See* Act of Sept. 1, 1995, 74th Leg., R.S., ch. 414, § 6, 1995 Tex. Gen. Laws 2993; *Univ. of Tex. Med. Branch at Galveston v. Barrett*, 112 S.W.3d 815, 818 n. 20 (Tex. App.—Houston [14th Dist.] 2003) (recognizing purpose of amendment), *aff'd*, 159 S.W.3d 631 (Tex. 2005). The current version of the statute continues to specify that abatement is the appropriate remedy when a plaintiff fails to provide presuit notice:

5

(d) The court shall abate the suit if the court, after a hearing, finds that the person is entitled to an abatement because notice was not provided as required by this section. A suit is automatically abated without the order of the court beginning on the 11th day after the date a plea in abatement is filed under Subsection (c) if the plea in abatement:

(1) is verified and alleges that the person against whom the suit is pending did not receive the written notice as required by Subsection (a); and

(2) is not controverted by an affidavit filed by the consumer before the 11th day after the date on which the plea in abatement is filed.

(e) An abatement under Subsection (d) continues until the 60th day after the date that written notice is served in compliance with Subsection (a).

TEX. BUS. & COM. CODE ANN. § 17.505(d), (e). Thus, when a plaintiff fails to provide presuit notice under subsection (a), the trial court must abate the suit until the plaintiff serves notice that complies with subsection (a).

Although the Legislature has specified abatement as the remedy when a plaintiff fails to serve presuit notice, it has not specified a consequence when a plaintiff fails to serve notice, or serves an inadequate notice, while the suit is abated for that purpose. But the *Hines* opinion does address this scenario, albeit in dicta: "If a plaintiff fails to give notice while the action is abated for that purpose, it should be dismissed." *Hines*, 843 S.W.2d at 469 (citing *Miller v. Kossey*, 802 S.W.2d 873, 876–77 (Tex. App.—Amarillo 1991, writ denied).

6

In *Miller*, a DTPA plaintiff gave presuit notice under the applicable version of the DTPA, but later conceded in open court that the notice was inadequate. *Miller*, 802 S.W.2d at 874–75. The trial court ordered the plaintiff to serve a new notice within seven days of the order, but the plaintiff did not serve a new notice until some six months later and on the eve of trial. *Id.* at 875. The trial court found that the new notice was untimely under the court's prior order and did not comply with the DTPA's notice requirements, and it dismissed the plaintiff's claims. *Id.* at 875–76. The court of appeals held that the trial court was authorized to dismiss the claims because the plaintiff failed to comply with the court's order. *Id.* at 877. Thus, although the DTPA does not expressly provide for dismissal when a plaintiff fails to serve the defendant with postsuit notice when the suit is abated for that purpose, dismissal is appropriate in some circumstances.

**Richardson's DTPA Claims**

Richardson argues that the trial court abused its discretion by dismissing his claims because his March 5, 2007 letter complied with section 17.505(a). In reply, Foster & Sear contend that because Richardson cites no case law to support his argument that his letter gave adequate notice, "his only argument is 'yes, I did!'" We note that Foster & Sear cite no authority in this court or the

7

trial court to show that Richardson's notice was inadequate; thus, in the spirit of fairness, we may characterize their only argument as "no, he didn't!"

To elevate the discourse to an appropriate legal level and determine whether Richardson's notice was adequate, we look to the requirements expressly set forth in section 17.505(a). The requirements establish a fairly low threshold for a notice letter. A DTPA notice must advise the defendant in reasonable detail of (1) the consumer's specific complaint and (2) the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees, if any, reasonably incurred by the consumer in asserting the claim against the defendant.

Richardson's March 5 letter, while not a model of clarity and eloquence, states in enough detail for this court—knowing nothing of his claims and allegations except what he asserted in his letter—to grasp the basis of his complaints against Foster & Sear, namely, that after agreeing to represent his interests in whatever claims his deceased father had for asbestos exposure, they settled those claims without his permission and refused to divulge his share of the settlement proceeds.[1] As for damages, Richardson specifically

---

[1] We express no opinion as to the truth or validity of Richardson's claims or the soundness of the legal theories upon which he bases them; those questions are not before the court.

states that he seeks $50,000 in settlement of his claim that Foster & Sear deprived him of $89,800 in settlement proceeds and his associated mental anguish. He further states that $250,000 "would be considered fair and reasonable" compensation for his claims for "negligence, professional negligence, . . . misrepresentation, breach of warranty, breach of fiduciary duty, breach of contract," and his DTPA claims and associated mental anguish. He also asserts that Foster & Sear failed to advise him "of the limitations on representation of the client, i.e., that attorney's undertaking the case did not extend to representing the client, survivor, [and] beneficiary," for which Richardson seeks $200,000. He summarized his claims with a demand for "[a] total of $500,000 for all combined legal injuries sustained, that constituted Deceptive Trade Practices."

Thus, Richardson's six-page letter set out the basis of his complaints against Foster & Sear and the amount of economic and mental anguish damages he seeks as required by section 17.505(a). The letter is sufficiently specific to allow Foster & Sear to determine whether to settle with Richardson or undertake the cost and risk of litigation. Thus, it states Richardson's claims and damages "in reasonable detail" as required by section 17.505(a) and fulfils the purpose of the notice requirement, to discourage litigation and encourage settlement of consumer complaints. *See Hines*, 843 S.W.2d at 468.

9

We hold that Richardson's March 5 letter complied with the minimal requirements of section 17.505(a) by providing in reasonable detail his specific complaints and the damages he sought sufficient to fulfil the purpose of the DTPA's notice requirement. We therefore sustain his sole issue as it pertains to his DTPA causes of action.

**Richardson's Non-DTPA Claims**

The trial court also dismissed Richardson's non-DTPA claims, "negligence, professional negligence, breach of warranty, breach of contract and gross negligence." Even if we assume (contrary to the record and our holding in the foregoing section) that Richardson provided no notice or inadequate notice of his DTPA claims, Foster & Sear cite no authority for the proposition that a trial court may dismiss non-DTPA claims when a plaintiff fails to give adequate notice of his DTPA claims, and our own research finds none.

The most similar case is *Miller*, 802 S.W.2d at 877. In *Miller*, when the trial court dismissed the plaintiff's DTPA claims on the eve of trial because the plaintiff had not served adequate notice of her DTPA claims as ordered, the plaintiff announced to the court that she was not willing to go forward on her non-DTPA claims. *Id*. at 875–76 . The court of appeals affirmed the dismissal of the non-DTPA claims, noting that "[o]ne of the fundamental powers

10

possessed by a trial court is the power to dismiss a case when a litigant refuses to prosecute the case." *Id.* at 877.

Nothing in the record before us suggests that Richardson refused to prosecute his non-DTPA claims; thus, *Miller* is distinguishable. Finding no other authority to support the trial court's dismissal of Richardson's non-DTPA claims, we hold that the trial court abused its discretion by so doing, and we sustain Richardson's issue as it pertains to his non-DTPA claims.

**Conclusion**

Having sustained Richardson's sole issue, we vacate the trial court's order of dismissal and remand the case for further proceedings.


ANNE GARDNER
JUSTICE

PANEL F:    LIVINGSTON, DAUPHINOT and GARDNER, JJ.

DELIVERED:  June 5, 2008

11